```
            UNITED STATES DISTRICT COURT
             SOUTHERN DISTRICT OF OHIO
                  WESTERN DIVISION
```

THE CINCINNATI GAS & ELECTRIC :
COMPANY, (k/n/a DUKE ENERGY :
OHIO), :
            :  NO. 1:06-CV-00331
   Plaintiff, :
            :
  v.        :  **OPINION AND ORDER**
            :
THE HARTFORD STEAM BOILER :
INSPECTION AND INSURANCE CO., :
et al., :
            :
   Defendants. :

    This matter is before the Court on Defendants' Motion for Summary Judgment (doc. 21), Defendants' Statement of Undisputed Facts in Support (doc. 22), the Affidavit of William Kramer (doc. 23), the Affidavit of Vito Maniaci (doc. 24), Plaintiff's Response in Opposition (doc. 29), and Defendants' Reply (doc. 31).  Also before the Court is Plaintiff's Motion for Partial Summary Judgment (doc. 25), Defendants' Response in Opposition (doc. 28), and Plaintiff's Reply (doc. 30).  For the reasons indicated herein, the Court GRANTS in part and DENIES in part Defendants' Motion, and GRANTS Plaintiff's Motion.  The Court further sets this matter for final pretrial conference on the remaining question of damages.

**I. Background**

    Plaintiff Duke Energy Ohio, ("DUKE") is a gas and electric public utility that provides electrical power to thousands of business and residential customers in Ohio (doc. 25).  Duke

operates a network of power plants, including the Miami Fort Station ("Miami Fort"), to serve the Ohio area (Id.). On May 6, 2005, a circuit breaker at Miami Fort failed, resulting in significant damage to one of Duke's transformers, "Unit 7" (Id.). At the time of the accident, Duke carried property insurance with the Defendant Insurance Companies: Hartford Steam Boiler Inspection and Insurance Company ("Hartford"), Associated Electric & Gas Insurance Services Limited ("AEGIS"), Zurich American Insurance Company ("Zurich"), and Energy Insurance Mutual Limited ("EIM")(collectively, "the insurers")(Id.). Although there is no dispute that the insurance policy in question covers the repair of the damaged transformer, at issue in this case is whether the insurers must cover the cost of transporting and installing a spare transformer that served as a temporary replacement for Unit 7 (doc. 21). Plaintiff claims such costs are covered under two different portions of the policy, an "expediting expense" clause, as well as an "extra expense" endorsement (Id.). Defendant insurers have denied coverage for the spare transformer, arguing that coverage under the expediting expense clause is precluded under Sixth Circuit precedent, while the extra expense endorsement is modified by an unambiguous exclusion endorsement (Id.). Both Plaintiff and Defendants argue they are entitled to judgment as a matter of law. Defendants contend that should the Court find the exclusion endorsement ambiguous, extrinsic evidence militates toward a ruling

in their favor (doc. 31). Plaintiff, however, argues that should the Court find such endorsement ambiguous, the Court should construe it against the insurers, and need not consider extrinsic evidence at all (doc. 29). Even if the Court would consider extrinsic evidence, Plaintiff argues, such evidence demonstrates the extra expense exclusion was only intended to apply to the purchase of electricity from outside sources, and not to the transportation and installation of a spare transformer (Id.).

**II. ANALYSIS**

**A. The Summary Judgment Standard**

Although a grant of summary judgment is not a substitute for trial, it is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56; see also, e.g., Poller v. Columbia Broadcasting System, Inc., 368 U.S. 464 (1962); LaPointe v. United Autoworkers Local 600, 8 F.3d 376, 378 (6th Cir. 1993); Osborn v. Ashland County Bd. of Alcohol, Drug Addiction and Mental Health Servs., 979 F.2d 1131, 1133 (6th Cir. 1992) (per curiam). In reviewing the instant motion, "this Court must determine whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Fatton v. Bearden, 8

3

F.3d. 343, 346 (6th Cir. 1993), quoting in part Anderson v. Liberty Lobby, Inc., 477 U.S. 242 251-252 (1986) (internal quotation marks omitted).

The process of moving for and evaluating a motion for summary judgment and the respective burdens it imposes upon the movant and non-movant are well settled. First, "a party seeking summary judgment ... bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact [.]" Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); see also LaPointe, 8 F.3d at 378; Garino v. Brookfield Township Trustees, 980 F.2d 399, 405 (6th Cir. 1982); Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479 (6th Cir. 1989). The movant may do so by merely identifying that the non-moving party lacks evidence to support an essential element of its case. See Barnhart v. Pickrel, Shaeffer & Ebeling Co. L.P.A., 12 F.3d 1382, 1389 (6th Cir. 1993).

Faced with such a motion, the non-movant, after completion of sufficient discovery, must submit evidence in support of any material element of a claim or defense at issue in the motion on which it would bear the burden of proof at trial, even if the moving party has not submitted evidence to negate the existence of that material fact. See Celotex, 477 U.S. at 317; Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). As the "requirement [of

the Rule] is that there be no genuine issue of material fact," an "alleged factual dispute between the parties" as to some ancillary matter "will not defeat an otherwise properly supported motion for summary judgment." Anderson, 477 U.S. at 247-248 (emphasis added); see generally Booker v. Brown & Williamson Tobacco Co., Inc., 879 F.2d 1304, 1310 (6th Cir. 1989). Furthermore, "[t]he mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." Anderson, 477 U.S. at 252; see also Gregory v. Hunt, 24 F.3d 781, 784 (6th Cir. 1994). Accordingly, the non-movant must present "significant probative evidence" demonstrating that "there is [more than] some metaphysical doubt as to the material facts" to survive summary judgment and proceed to trial on the merits. Moore v. Philip Morris Cos., Inc., 8 F.3d 335, 339-340 (6th Cir. 1993); see also Celotex, 477 U.S. at 324; Guarino, 980 F.2d at 405.

Although the non-movant need not cite specific page numbers of the record in support of its claims or defenses, "the designated portions of the record must be presented with enough specificity that the district court can readily identify the facts upon which the non-moving party relies." Guarino, 980 F.2d at 405, quoting Inter-Royal Corp. v. Sponseller, 889 F.2d 108, 111 (6th Cir. 1989) (internal quotation marks omitted). In contrast, mere conclusory allegations are patently insufficient to defeat a motion

5

for summary judgment. See McDonald v. Union Camp Corp., 898 F.2d 1155, 1162 (6th Cir. 1990). The Court must view all submitted evidence, facts, and reasonable inferences in a light most favorable to the non-moving party. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970); United States v. Diebold, Inc., 369 U.S. 654 (1962). Furthermore, the district court may not weigh evidence or assess the credibility of witnesses in deciding the motion. See Adams v. Metiva, 31 F.3d 375, 378 (6th Cir. 1994).

Ultimately, the movant bears the burden of demonstrating that no material facts are in dispute. See Matsushita, 475 U.S. at 587. The fact that the non-moving party fails to respond to the motion does not lessen the burden on either the moving party or the Court to demonstrate that summary judgment is appropriate. See Guarino, 980 F.2d at 410; Carver v. Bunch, 946 F.2d 451, 454-455 (6th Cir. 1991).

**B.   Defendants' Motion for Summary Judgment**

    **1.   Defendants' Arguments (doc. 21)**

The insurers move for summary judgment first as to Plaintiff's claim pursuant to the "expediting expense" clause of the policy, which covers:

> The reasonable extra cost to make temporary repairs and to expedite the permanent repair or replacement of property damage by a peril insured, including overtime and the extra cost of express or other rapid means of transportation.

6

(doc. 21). Defendants argue that <u>Detroit Edison Co. v. Protection Mutual Insurance Co.</u>, 134 F.3d 790 (6th Cir. 1998), is dispositive of Plaintiff's claim under this clause of the policy (<u>Id</u>.). Defendants argue that in <u>Detroit Edison</u> the Sixth Circuit found a virtually identical insurance contract clause limited coverage to "temporary repairs" as distinguished from "temporary replacements" (<u>Id</u>.). As such, the Sixth Circuit held the costs associated with temporary replacement transformers were not covered under the clause. (<u>Id</u>. <u>citing</u> 134 F.3d at 795). Here, argue Defendants, the Court should do the same (<u>Id</u>.).

Next, Defendants attack Plaintiff's claim pursuant to the "extra expense" coverage endorsement, which provides:

> 1. Extra Expense
>
> The term Extra Expense shall mean:
>
> a. the reasonable and necessary extra expenses incurred to temporarily continue as nearly normal as practicable the conduct of the Insured's business; and
>
> b. the reasonable and necessary extra costs of temporarily using property or facilities of the Insured or others.

(<u>Id</u>.). Although Defendants acknowledge the spare transformer expenses meet the definition of extra expenses, they argue the endorsement is further limited by an exclusion in the Policy's Endorsement No. 2, which states:

> It is agreed that there shall be no recovery under this policy for any Extra Expense incurred in the generation, transmission, purchase, replacement, trading, or

7

distribution of electrical power. (Id.) Defendants argue the purpose of the spare transformer was to enable the Unit 7 generator to generate, transmit, and distribute power to the grid (Id.). Consequently, they argue, the coverage exclusion unambiguously applies such that the spare transformer is not covered (Id.). However, argue Defendants, should the Court find such exclusion ambiguous, under Ohio contract construction principles, the Court must consider extrinsic evidence to resolve the ambiguity (Id.). In this case, argue Defendants, Plaintiff expressed its desire during negotiations of the contract, through its broker Marsh USA ("Marsh"), to duplicate the expiring policy it held with FM Global (Id.). According to Defendants, the FM Global policy limited "extra expense" coverage to electronic data processing media only (Id.). As such, contend Defendants, the parties understood the extra expense clause to have a narrow scope, that is, to only cover electronic data processing media (Id.). Defendants argue Plaintiff only had buyer's remorse after the Miami Fort accident, at which time, in Defendants' view, Plaintiff complained the limitation only applies to the purchase of replacement power (Id.).

### 2. Plaintiff's Response (doc. 29)

Plaintiff argues the plain language of the exclusion excludes only the cost of replacement power (doc. 29). According to Plaintiff, the exclusion is inapplicable to property associated

with power, such as the spare transformer (Id.). The exclusion, argues Plaintiff, clearly applies to the purchase of power, the costs of which include generation, transmission, and distribution to Plaintiff's load zone (Id.). Such an interpretation, argues Plaintiff, merits its purchase of twenty million dollars worth of extra expense coverage, with a $2.5 million deductible (Id.). Moreover, argues Plaintiff, its understanding comports with paragraph F of Endorsement No. 1, which requires Plaintiff to use its own property to reduce the extra expense incurred (Id.). Plaintiff argues it did just that, by using its own spare transformer, while incurring extra expenses in transporting and installing it (Id.). Defendants' interpretation, argues Plaintiff, would exclude absolutely anything related to electrical power, which would exclude everything in Plaintiff's business as a power company (Id.).

Plaintiff next argues that even if the exclusion applies to more than the purchase of electrical power, the transformer still is not involved in the generation, transmission, or distribution of electrical power (Id.). In Plaintiff's view, a transformer merely transforms voltage and current, and as a piece of equipment cannot be excluded as an extra expense (Id.).

In any event, contends Plaintiff, the exclusion is ambiguous, and therefore, under U.S. Fidelity & Guaranty Co. v. Lightning Rod Mut. Ins. Co., 80 Ohio St.3d 584, 586 (1997), should

9

be strictly construed against Defendants (Id.). Plaintiff argues the Court therefore need not consider extrinsic evidence, but should just enter judgment in Plaintiff's favor as a matter of law (Id. citing Owens Corning v. National Union Fire Insurance Co. of Pittsburgh, No. 97-6637, 1998 U.S. App. LEXIS 26233, *18 (6th Cir. October 13, 1998). However, should the Court consider extrinsic evidence, Plaintiff further argues such evidence shows that the parties' intent was to exclude only costs associated with replacement power (Id.). Plaintiff proffers a declaration of its managing director, Anthony G. Redden, confirming as much, and argues that evidence related to its previous FM Global policy similarly supports its position (Id.). Plaintiff argues that when its broker Marsh sent the FM Global policy, Marsh advised Plaintiff that it had extra expense coverage excluding the cost to purchase replacement power (Id.). Plaintiff argues the same language turns up in a 2002 binder explaining the FM Global Policy, and that the statement "applies to electronic data processing only" was slipped in by the insurers in an attempt to change the terms of the agreement, against Plaintiff's intent as reflected in prior communications (Id.).

Plaintiff further argues when it sought a new policy in 2003, it did not seek to have its extra expense coverage limited to electronic data processing ("EDP"), but sought broad coverage including EDP as well as other extra expenses(Id.). Plaintiff

10

proffers evidence that a March 6, 2003 quote it obtained from Starr Tech on behalf of Defendant Hartford quoted extra expense coverage that would only exclude the costs associated with replacement power (Id.). Plaintiff further argues that Defendants' argument that the extra expense endorsement is limited to EDP is belied by the fact that Endorsement No. 10 provides stand-alone EDP extra expense coverage (Id.). Plaintiff contends no such separate endorsement would be necessary should the extra expense provision already be limited to EDP (Id.).

Plaintiff proffers further evidence that during the renewal of the 2004-2005 policy, Defendants Hartford, AEGIS, and EIM issued binders in March expressing that extra expense coverage excluded costs related to the purchase of replacement power, while Zurich placed no limitation on extra expense coverage (Id.). Moreover, it argues, its broker, Marsh, submitted a proposal that extra expense coverage would exclude "cost to purchase replacement power" (Id.).

As for the 2005-2006 policy renewal, the applicable policy in this case, Plaintiff again proffers binders from Hartford, AEGIS, and Zurich that only limit extra expense coverage by the exclusion of the cost to purchase replacement power (Id.). Finally, Plaintiff argues that the insurer's own adjuster, Bill Kramer, in a June 18, 2005 memorandum, advised the insurers that Plaintiff would incur significant extra expenses related to the

Miami Fort accident, and later in a June 21, 2005 email, expressed that the exclusion applicable to extra expenses appeared to limit the purchase of extra power (Id.). These admissions, argue Plaintiff, support their view that the parties' intent was to exclude from extra expense coverage only those costs associated with the purchase of replacement power, and at the very least, raise an issue of fact precluding summary judgment (Id.).

### 3. Defendants' Reply (doc. 31)

Defendants reply that Plaintiff in no way addressed its arguments concerning expediting expenses, and therefore they are entitled to a ruling that no coverage is afforded pursuant to such clause (doc. 31). Defendants further argue that Plaintiff gets Ohio law wrong on the question of interpretation of insurance policies (Id.). Under Plaintiff's view, argue Defendants, the Court must first determine whether an exclusion is subject to only one reasonable interpretation, and then, if it is not, give the exclusion no effect at all (Id.). Such an approach, argue Defendants, is entirely inconsistent with the cardinal rule in policy interpretation that the Court must ascertain the intent of the parties (Id. citing Chicago Title Insurance v. The Huntington National Bank, 719 N.E. 2d 955, 959 (Ohio 1999)). The construing of a contract against the drafter, argues Defendants, is a rule of last resort, implemented only when the parties' intentions cannot be discerned from the language of the contract or from extrinsic

12

evidence (Id. citing Winningham v. Sexton, 820 F.Supp 338 (S.D. Ohio 1993)). Defendants argue Plaintiff draws a false distinction between the interpretation of regular policy provisions and exclusions, based on an unpublished decision, Owens Corning, 1998 U.S. App. LEXIS 26233, which relied on Lightning Rod, 687 N.E. 2d 717, a case that did not stand for such a proposition (Id.). In more recent and more persuasive authority, argue Defendants, courts have applied extrinsic evidence in interpreting insurance exclusions, as opposed to strictly construing the exclusions against the drafter (Id. citing Gottlieb & Sons v. Hanover Ins. Co., No. 64559, 1994 Ohio App. LEXIS 1682 at * (Ohio Ct. App. April 21, 1994), GenCorp v. American International Underwriters, 178 F.3d 804, 818 (6th Cir. 1999), Affiliated FM Ins. Co. v. Owens Corning Fiberglass, 16 F. 3d 684 (6th Cir. 1994)).

Defendants next argue that Endorsement No. 2 excludes more than the cost of replacement power, and should Plaintiff had wanted a narrower exclusion, it could have drafted it as such to reflect such an intent (Id.). They contend there is nothing in the exclusion suggesting that the words "generation," "transmission," "trading," and "distribution" apply to the purchase of replacement power (Id.). In Defendants' view, whether Plaintiff purchases power, trades for electrical power, or produces its own power, the associated costs are all excluded under Endorsement No. 2 (Id.). Defendants argue the cost of the spare transformer is an expense

13

associated with electrical power, and that Plaintiff toys with semantics in drawing a distinction between expenses to deliver power and distribute power (Id.). Defendants argue the purpose of the spare transformer is to take low voltage leaving the generator and convert it to higher voltage for long distance transmission—that such a function amounts to the transmission and distribution of power, which is excluded under the contract (Id.).

Defendants reiterate next that the exclusion is not ambiguous, but should the Court disagree, the extrinsic evidence establishes the parties did not intend to insure the cost of a spare transformer (Id.). Defendants argue the facts show that even if Plaintiff's managing director claims Plaintiff always intended to have coverage for temporary replacement property, there is no evidence that such desire was communicated to the insurance broker or to the insurers (Id.). Defendants argue there is no question that the expiring FM Global policy limited extra expense coverage to EDP, and argue Plaintiff's claim is preposterous and unsupported that such limitation was "slipped" into the FM Global policy against its intent (Id.). Defendants argue Plaintiff misreads the binder language, because the exclusions included extra expenses for the generation, transmission, purchase and distribution of power (Id.). Finally, Defendants argue that even if their adjuster admitted the cost of the transformer would be covered, such admission is of no consequence because only extrinsic

14

evidence establishing intent at the time of contracting is relevant (Id.).

**C. Plaintiff's Motion for Partial Summary Judgment**

Plaintiff's Motion (docs. 25, 30) virtually mirrors the arguments it raised in its Response to Defendants' Motion for Summary Judgment. Defendants' Response (doc. 28), similarly follows the arguments raised in their Motion. The Court therefore sees no need to parse through the repeated arguments, and proceeds to its decision.

**III. Discussion**

As an initial matter, the Court finds well-taken Defendants' position concerning the "expediting expenses" clause of the contract. Plaintiff, by lack of response, appears to have conceded the point. The Sixth Circuit held in Detroit Edison that a virtually identical insurance contract clause in a similar case limited coverage to "temporary repairs," and that as such, the costs associated with temporary replacement transformers were not covered. (Id. citing 134 F.3d at 795). The Court is bound by such precedent, and Defendants' are entitled to summary judgment on Plaintiff's claim under the expediting clause. Accordingly, the Court will devote its analysis to the parties' arguments surrounding the "extra expense" endorsement and the scope of its exclusion.

The interpretation of an insurance contract is a legal

15

question. Gencorp, Inc. v. American International Underwriters, 178 F.3d 804, 817 (6th Cir. 1999)(citing Leber v. Smith, 70 Ohio St. 3d 548, 639 N.E.2d 1159, 1163 (Ohio 1994). The foremost goal of the Court is to give effect to the parties' intent, so where the contract terms are unambiguous, the terms are to be applied, not interpreted. Id. at 818, (citing Timber Ridge Inv., Ltd. v. Marcus, 107 Ohio App. 3d 174, 667 N.E.2d 1283, 1285 (Ohio Ct. App. 1995)). However, where there is ambiguity in a contract, extrinsic evidence is admissible to assist in the interpretation of the parties' intent. Id.(citing Graham v. Drydock Coal Co., 76 Ohio St.3d 311, 667 N.E.2d 949, 952 (Ohio 1996)). If an examination of the extrinsic evidence fails to conclusively resolve the issue, and a question of intent remains, then summary judgment is improper, and a question of fact for the jury arises. Potti v. Duramed Pharmaceuticals, Inc., 938 F.2d 641, 647 (6th Cir. 1991).

The Court agrees with Defendants that Plaintiff misreads Ohio law in its argument that once an ambiguity is determined in an insurance exclusion, the Court must immediately construe the provision against the drafting insurance company. The Court finds that in some circumstances, where the insured is not on an equal bargaining level with the company, such a rule of interpretation may be appropriate. Gottlieb & Sons, Inc. v. Hanover Ins. Co., No. 64559, 1994 Ohio App. LEXIS 1682 *12 (Ohio Ct. App. April 21, 1994). The policy behind such rule is to force insurance companies

16

to use their knowledge about policy disputes to affirmatively exclude ambiguous areas of coverage. Id. In this case, however, the entities are all sophisticated business entities represented by experienced insurance brokers, all capable of bargaining with specificity and experience. The Court therefore concludes the appropriate course in this matter is to arrive at the intent of the parties as to the meaning of exclusion, Endorsement No. 2. The Court must therefore determine first whether the contractual provision in question is ambiguous, then, if so, to review all evidence in attempting to determine intent. Should the Court be unable to make such determination, it must deny summary judgment to either side, and let a jury make the ultimate determination of intent.

Endorsement No. 2 excludes coverage "for any Extra Expense incurred in the generation, transmission, purchase, replacement, trading, or distribution of electrical power." Having reviewed this matter, the Court finds no question that Endorsement No. 2 on its face is subject to various reasonable interpretations, and therefore qualifies as ambiguous. Gencorp, Inc. v. American International Underwriters, 178 F.3d at 818 (6th Cir. 1999) citing Affiliated FM Ins. Co. v. Owens-Corning Fiberglass Corp., 16 F.3d 684, 686 (6th Cir. 1994). Literally, the provision can be read to exclude just about everything related to Plaintiff's business, in accordance with Defendants' view. However, the provision can also

17

be viewed as listing a number of exclusions all related to electrical power, as opposed to property. Under this alternate view, that held by Plaintiff, the provision on its face does not exclude the costs associated with equipment like a spare transformer. Such a reading comports with the overall contract, which covers property losses.

The parties argue in their briefing about the fundamental purpose of a transformer. Defendants argue that there would be no transmission of electricity without a transformer; Plaintiff argues a transformer merely converts current, while electric lines transmit current. Both parties to the negotiation of the contract could have defined with much more precision whether specific types of equipment, including a transformer, fell within the scope of the exclusion. Neither side did so, and the result is an ambiguous exclusion.

Having thus concluded, the Court must consider extrinsic evidence to determine the intent of the parties. Defendants proffer affidavits of Vito Maniaci, who worked for Defendants' broker, Starr Tech, in negotiating the contract, and of William Kramer, the loss adjuster (docs. 23, 24). Maniaci avers that through the entire negotiation process Plaintiff's broker, Marsh, never raised questions about Endorsement No. 2, and indicates that Starr Tech never demonstrated any intent "to insure extra expenses for the generation, transmission or distribution of electrical

power" (Id.). Kramer offered his opinion by affidavit that the spare transformer costs were not covered under the policy, an opinion that appears to conflict with prior statements he made, proffered by Plaintiff (Id.).

The Court agrees with Defendants' position in their Reply in Support of their Motion, that the extrinsic evidence that matters is that relating to the negotiation of the contract. Therefore evidence relating to Kramer's opinion, which appears to support the positions of both parties, merely serves to confirm the ambiguity in Endorsement No. 2. Maniaci's affidavit applies squarely to the negotiation process, but does not show that either party to the negotiation shared an understanding of the meaning of the exclusion. The affidavit shows rather that neither side squarely addressed the topic.

The parties' arguments concerning the preceding FM Global contract, the March 6, 2003 quote, and the binders issued by Defendants similarly show how the evidence can be viewed from either perspective. Plaintiff's claim that the exclusion limiting extra expense coverage to electronic data processing in the FM Global contract was "slipped in," is, as Defendants argue, dubious at best. However, the subsequent history of riders shows language that favors Plaintiff's position that the coverage was broad, and the exclusion only applied to the purchase of electric power. This subsequent history persuades the Court that the insurance companies

and Duke were in agreement that the exclusion only applied to the purchase of additional electric power. Such conclusion comports with the overall purpose of the contract, in insuring property. The alternative proposed by Defendants does not. Defendants' interpretation would effectively exclude everything related to the very business Plaintiff operates. The Court does not find Defendants' position persuasive, and in the light of weight of the extrinsic evidence, construes Endorsement 2 against them. The costs Plaintiff incurred in transporting and installing the spare transformer that served as a temporary replacement for Unit 7 are covered as extra expenses under the agreement. Having thus concluded, the Court finds it necessary to set a final pretrial question on the question of damages, which the Court understands is still disputed.

Accordingly, the Court DENIES IN PART Defendants' Motion for Summary Judgment as to the extra expense endorsement (doc. 21), but GRANTS IN PART such motion as to the expediting expenses clause, GRANTS Plaintiff's Motion for Partial Summary Judgment (doc. 25), FINDS Defendants liable for the transportation and replacement costs of the spare transformer, and SETS this matter for final pretrial conference at 11:00 A.M. on June 12, 2008, at which time the Court shall set a trial date.

SO ORDERED.

Dated: April 9, 2008      /s/ S. Arthur Spiegel
                          S. Arthur Spiegel

20